

FILED

FEB 2 5 2020

AT 8:30 _____ *1:05* M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. *Esther Salas* |
| v. | : | Crim. No. *20-194 (ES)* |
| SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR." | : | 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), 1014, 1343, and 2; and 28 U.S.C. |
| | : | § 2461 |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

## COUNTS 1 and 2

### (Wire Fraud)

1.      At times relevant to Counts 1 and 2 of this Indictment:

A.      Defendant SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.," ("defendant ADAMS") was a principal of Adams Property Management and Investment Group Limited Liability Company ("Adams Property Management").

B.      On or about September 15, 2014, defendant ADAMS arranged for Adams Property Management to obtain a $100,000 mortgage loan from a group of investors (the "Investors") to purchase property located on Hilton Street, East Orange, New Jersey (the "Hilton Street Property") for the purpose of improving and reselling it. Pursuant to the mortgage, Adams Property Management was required to make interest only monthly payments and a final balloon payment of all outstanding principal, interest, and other charges due on or before October 15, 2015.

C.      Individual 1 was a close associate of defendant ADAMS.

1

D.      On or about January 7, 2015, defendant ADAMS, on behalf of Adams Property Management, signed a contract to sell the Hilton Street Property to Individual 1 for a purchase price of $240,000. The price was later reduced to $225,000. Individual 1 purchased the Hilton Street Property from Adams Property Management on or about March 25, 2015. On or about that same date, Individual 1 signed a Promissory Note in connection with a mortgage loan in the amount of approximately $153,562 that Individual 1 received to purchase the Hilton Street Property, promising to pay that amount to the mortgage lending business based in Texas that made the loan, its successors and/or assigns (the "Lender").

E.      Individual 2 was an associate of defendant ADAMS and purchased the Hilton Street Property from Individual 1 on or about May 31, 2016.

F.      Company 1 was a bank, the accounts of which were insured by the Federal Deposit Insurance Company. From its offices located in Oregon, Company 1 operated a business as a mortgage servicer and debt collector for other companies, including the Lender.

2.      From in or about January 2015 to in or about June 2016, in the District of New Jersey and elsewhere, defendant

SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

knowingly did devise and intend to devise a scheme and artifice to defraud the Lender of money and property in connection with the mortgage loan that the Lender made to Individual 1 to purchase the Hilton Street Property, by means of materially false and fraudulent pretenses, representations, and promises.

3.      The objects of this scheme and artifice to defraud were:

A. when Individual 1 purchased the Hilton Street Property, for defendant ADAMS to cause the proceeds of the Lender's loan to Individual 1 to be used: (i) to pay off

2

Adams Property Management's mortgage loan for the Hilton Street Property, and (ii) to obtain a check in a substantial amount payable to Adams Property Management; and

B.   when Individual 1 sold the Hilton Street Property to Individual 2, for defendant ADAMS to obtain for himself the proceeds of a check payable to Individual 1 for the amount that the Lender reduced Individual 1's mortgage loan payoff amount,

all through the fraudulent activity set forth below.

4.     On or about January 27, 2015, defendant ADAMS sent and caused to be sent an email to one of the Investors. Attached to that email was a letter from defendant ADAMS directed to the "Investors," in which he acknowledged that he was behind in his payments to the Investors. Defendant ADAMS also explained that he was selling the Hilton Street Property to pay them back, but needed to "show money for the deal to close." Defendant ADAMS advised the Investors, in pertinent part:

Please accept this letter detailing the reason why, at the present time, your payment has not been received.

Because I am selling the [Hilton Street Property], and must show money for the deal to close.   I will close this property before Feb. 1, 2015 and all of your interest will be paid in full.

The principal would be used for the purchase of [a property in Irvington, New Jersey, for which defendant ADAMS sought an investment loan (the "Irvington Property")].   All 6 months in interest will be paid in full at the closing table in hopes that we will not have any problems with our relationship.   It means so much to me to keep a good working relationship between all parties.   I am looking for business to continue on so everyone can make money and be happy.

Thank you in advance for all that you have done so far!!!!

*       *       *

In Summary

1.   [The Hilton Street Property] – Balance of interest will be paid at closing on or before February 1, 2015.

3

2.  $100K loan for [the Irvington Property] will come from [the Hilton Street
    Property] at closing and all 6 months of interest will be paid at closing in full & in
    cash.   Roughly about $7,000.00.

Defendant ADAMS, through Adams Property Management, did not sell the Hilton Street
Property on or before February 1, 2015.

5.      Between in or about January 2015 and on or about March 25, 2015, defendant
ADAMS arranged for Individual 1 to obtain a mortgage loan in the amount of approximately
$153,562 from the Lender to purchase the Hilton Street Property ("Individual 1's mortgage
loan"). Defendant ADAMS knew that Individual 1 did not have money to pay the balance of the
purchase price of $225,000 for the Hilton Street Property.

6.      On or about March 25, 2015, defendant ADAMS caused the Lender to send
approximately $143,883.68 in loan funds via interstate wire to the title company that was the
settlement agent at the closing on Individual 1's purchase of the Hilton Street Property.

7.      On or about March 25, 2015, defendant ADAMS and Individual 1 attended the
closing of the sale of the Hilton Street Property to Individual 1. To purchase the Hilton Street
Property, Individual 1 had to pay the closing balance to Adams Property Management. Despite
knowing that Individual 1 did not have money to pay the closing balance, defendant ADAMS
directed Individual 1 to issue a fraudulent check in the amount of $90,280.47 payable to Adams
Property Management, which defendant ADAMS reassured Individual 1 that defendant ADAMS
would not negotiate. On or about March 25, 2015, as defendant ADAMS had directed, Individual
1 issued the fraudulent $90,280.47 check payable to Adams Property Management to give the
false impression that Individual 1 paid the closing balance. A Settlement Statement, which

identified all receipts and disbursements purportedly made in connection with the sale of the Hilton Street Property, falsely stated that the closing balance of $90,280.47 was paid directly to Adams Property Management by Individual 1 (the "Settlement Statement").

8.      On or about March 25, 2015, defendant ADAMS signed the Settlement Statement, falsely certifying that Individual 1 paid a closing balance of $90,280.47 directly to Adams Property Management and that the Settlement Statement was a true and accurate statement of all receipts and disbursements made in connection with the sale of the Hilton Street Property, when defendant ADAMS knew that Individual 1's $90,280.47 check was fraudulent. The signed Settlement Statement was provided to the Lender.

9.      On or about March 25, 2015, defendant ADAMS caused loan proceeds obtained from the Lender under the false pretense that Individual 1 paid $90,280.47 toward the purchase price for the Hilton Street Property to be used:

   A. to pay off Adams Property Management's mortgage loan on the Hilton Street Property, which was approximately $100,427.90 on or about March 25, 2015; and

   B. to obtain a check in the amount of $26,335.30 payable to Adams Property Management, which defendant ADAMS deposited and caused to be deposited in a bank account in the name of Adams Property Management on or about March 25, 2015.

10.     As of in or about May 2016, despite reassurances given by defendant ADAMS to Individual 1 that defendant ADAMS would fund the payments on Individual 1's mortgage loan, Individual 1's mortgage loan payments fell substantially in arrears.

11.     In or about 2016 (and sometime before on or about May 31, 2016), defendant ADAMS arranged for Individual 1 to enter into a contract with Individual 2 to sell the Hilton

Street Property to Individual 2 for the purchase price of $315,000. The purchase price was later reduced to $255,000.

12.    On or about May 31, 2016, the closing on the sale of the Hilton Street Property by Individual 1 to Individual 2 was commenced, at which Individual 1 and Individual 2 signed various closing documents. With defendant ADAMS's assistance, Individual 2 had obtained a mortgage loan of approximately $250,381 to purchase the Hilton Street Property. As of May 31, 2016, the amount that Individual 1 owed to the Lender to pay off Individual 1's mortgage loan, including interest and other fees, was approximately $210,565.34.

13.    On or about June 1, 2016, defendant ADAMS and Individual 1 had a telephone conversation with a representative of Company 1, the mortgage servicer for the Lender, during which defendant ADAMS identified himself and was identified by Individual 1 as Individual 1's father. During that telephone conversation, defendant ADAMS made false and fraudulent statements to Company 1 to conceal Individual 1's sale of the Hilton Street Property to Individual 2 for $255,000 and to induce the Lender to reduce Individual 1's payoff amount of $210,565.34, including, in substance:

   A.  that the Hilton Street Property was only worth $225,000, when defendant ADAMS knew the price for Individual 2 to purchase the property from Individual 1 was $255,000;

   B.  that defendant ADAMS was the one who was paying off Individual 1's mortgage, when defendant ADAMS knew that the source of funds for the payoff of Individual 1's mortgage was not defendant ADAMS, but Individual 2's mortgage loan proceeds to purchase the Hilton Street Property;

   C.  when defendant ADAMS was asked by Company 1's representative whether the Hilton Street Property was being kept or resold, responding, that defendant ADAMS was giving that property to one of his other sons, instead of telling Company 1's representative about the sale of the property from Individual 1 to Individual 2, and

    D. that defendant ADAMS was going to hold on to the property until he could sell it, when defendant ADAMS knew of the sale of the property from Individual 1 to Individual 2.

Following this conversation in which defendant ADAMS made those false and fraudulent statements, the Lender agreed to reduce Individual 1's payoff amount from $210,565.34 to $190,000, a difference of $20,565.34.

    14.    On or about June 3, 2016, after the Lender agreed to reduce Individual 1's payoff amount to $190,000, the title company handling the closing of Individual 1's sale of the Hilton Street Property to Individual 2 issued a check in the amount of $20,665.34 payable to Individual 1. On or about the same date, at defendant ADAMS's direction, Individual 1 cashed that check at a check casher in New Jersey and delivered the cash proceeds of $20,665.34 to defendant ADAMS.

    15.    On or about the dates listed below, in the District of New Jersey and elsewhere, for the purposes of executing and attempting to execute this scheme and artifice to defraud, defendant

                     SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

knowingly and intentionally did transmit and cause to be transmitted in interstate commerce by means of wire, radio and television communications, certain writings, signs, signals, pictures and sounds, as listed below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 1 | March 25, 2015 | An interstate wire transfer of approximately $143,883.68 by the Lender to fund the mortgage loan to Individual 1 to purchase the Hilton Street Property from Adams Property Management. |

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 2 | June 1, 2016 | An interstate telephone call in which defendant ADAMS made false and fraudulent statements to a representative of Company 1, as described in Paragraph 13 above, to induce the Lender to reduce the payoff amount for Individual 1's mortgage loan. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT 3

### (False Statements in Connection with a Mortgage Loan)

1.      The allegations set forth in Paragraphs 1 and 4 to 14 of Counts 1 and 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about March 25, 2015, in the District of New Jersey and elsewhere, defendant

SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

did knowingly make and cause to be made false statements for the purpose of influencing in some way the action of the Lender in connection with Individual 1's mortgage loan, namely, defendant ADAMS's false statements that Individual 1 paid a closing balance of $90,280.47 directly to Adams Property Management and that the Settlement Statement was a true and accurate statement of all receipts and disbursements made in connection with the sale of the Hilton Street Property.

In violation of Title 18, United States Code, Section 1014 and Section 2.

9

## COUNT 4

### (False Statements in Connection with a Mortgage Loan)

1.      The allegations set forth in Paragraphs 1 and 4 to 14 of Counts 1 and 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about June 1, 2016, in the District of New Jersey and elsewhere, defendant

SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

did knowingly make and cause to be made false statements for the purpose of influencing in some way the action of the Lender and Company 1 in connection with Individual 1's mortgage loan, namely, defendant ADAMS's false statements to a representative of Company 1, as set forth in Paragraph 13 of Counts 1 and 2 of this Indictment.

In violation of Title 18, United States Code, Section 1014 and Section 2.

## COUNTS 5 to 8

### (Wire Fraud)

1.      The allegations set forth in Paragraphs 1A and 1B of Counts 1 and 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      At all times relevant to Counts 5 to 8 of this Indictment:

A.      Defendant ADAMS was a principal of VH Electrical and Plumbing Limited Liability Company ("VH"), a company formed on or about March 14, 2015, which purportedly was involved in general contracting. VH's offices were located at the Hilton Street Property.

B.      Timur Davis ("Davis") was the Executive Director of the public library (the "Library") in the City of Orange Township, New Jersey ("Orange").

C.      The United States Department of Housing and Urban Development ("HUD") was a department of the Executive Branch of the United States Government. HUD's mission was to create strong, sustainable, inclusive communities and quality affordable homes for low- and moderate income residents. HUD sponsored a Community Development Block Grant ("CDBG") program to disburse grants for local communities to address a range of housing and development issues.

D.      The County of Essex was a county in Northeast New Jersey with a local government that administered all county business (the "County"), including the receipt and disbursement of CDBG funds that the County received from HUD.

3.      On or about September 1, 2014, the County entered into an agreement with Orange and the Library for the use of $48,000 in CDBG funds that had been awarded to replace

the HVAC/Chiller unit at the Library (the "Chiller Replacement Project"). Under the terms of the agreement, Orange and the Library were required to cover the initial cost of the Chiller Replacement Project and then submit to the County requests for reimbursement and supporting documentation for their expenditures. The County, after approving such requests for reimbursement, was to draw down the HUD funding.

4.      From in or about March 2015 to in or about June 2015, in the District of New Jersey, and elsewhere, defendant

SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

knowingly did devise and intend to devise a scheme and artifice to defraud the Library of money and property in connection with the Chiller Replacement Project, by means of materially false and fraudulent pretenses, representations, and promises.

5.      The object of this scheme and artifice to defraud was for defendant ADAMS, through VH, to obtain money and property from the Library for defendant ADAMS's personal use and other business interests, including those of Adams Property Management, by having the Library:

A.  award a contract to VH to replace the Library's Chiller under the false pretense that VH would perform the services for an amount less than that purportedly quoted by two other vendors ("Vendor 1" and "Vendor 2"); and

B.  pay VH pursuant to that contract under the false pretense that VH would replace the Library's Chiller.

6.      It was a part of the scheme and artifice to defraud that:

A.      On or about March 3, 2015, defendant ADAMS sent and caused to be sent an email to Davis, utilizing a server located outside of New Jersey, with two documents attached:

i.      a quote from VH indicating that it would replace the Library's Chiller for $52,000,

12

and

ii.  a fake inflated quote purportedly from Vendor 1, indicating that Vendor 1 would replace the Library's Chiller for $65,000, an amount higher than that quoted by VH. At that time, defendant ADAMS knew that the quote purportedly from Vendor 1 was fraudulent.

B.    On or about March 4, 2015, defendant ADAMS sent and caused to be sent to Davis by email, utilizing a server located outside of New Jersey, a quote indicating that VH would replace the Library's Chiller not for $52,000, but for $49,000.

C.    On or about March 5, 2015, defendant ADAMS sent and caused to be sent to Davis by email, utilizing a server located outside of New Jersey, a fake inflated quote purportedly from Vendor 2, indicating that Vendor 2 would replace the Library's Chiller for $58,000, an amount higher than that quoted by VH. At that time, defendant ADAMS knew that the quote purportedly from Vendor 2 was fraudulent.

D.    On or about March 11, 2015, defendant ADAMS, on behalf of VH, and Davis, on behalf of the Library, signed an agreement to have VH replace the Library's Chiller for a fee of $49,000.

E.    On or about March 13, 2015, defendant ADAMS and Davis caused the Library to issue a check in the amount of $15,000 payable to VH to replace the Library's Chiller. On or about March 14, 2015, defendant ADAMS caused that $15,000 check to be cashed at a check casher in New Jersey.

F.    On or about March 26, 2015, defendant ADAMS sent and caused to be sent to Davis by email, utilizing a server outside of New Jersey, a Chiller vendor's "Equipment Quotation" of approximately $33,875, which included the price for a Chiller, to give the false

impression that defendant ADAMS was taking steps to order a Chiller to replace the one at the Library.

        G.     On or about May 4, 2015, defendant ADAMS and Davis caused the Library to issue a check in the amount of $25,000 payable to VH to replace the Library's Chiller (the "$25,000 Library check"). On or about May 6, 2015, defendant ADAMS deposited and caused to be deposited in VH's bank account the $25,000 Library check.

        H.     From on or about May 6, 2015 to on or about May 26, 2015, defendant ADAMS used and caused to be used the proceeds of the $25,000 Library check for withdrawals of approximately $23,000 in cash from VH's bank account and payments for other expenses, including personal expenses.

        I.     On or about May 29, 2015, defendant ADAMS sent and caused to be sent to Davis by email, utilizing a server located outside of New Jersey, a fraudulent VH invoice, dated May 15, 2015, stating that VH "received $25,000.00 towards the purchase of the . . . Chilling Unit," to give the false impression that defendant ADAMS had used the $25,000 Library check to order a Chiller for the Chiller Replacement Project, when he had not done so. Defendant Adams did not replace the Library's Chiller thereafter, despite having received $40,000 from the Library under false pretenses to do so.

        7.     On or about the dates listed below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendant

              SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

knowingly and intentionally transmitted and caused to be transmitted in interstate commerce by means of wire, radio, and television communications, certain writings, signs, signals, pictures, and sounds, as listed below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 5 | March 3, 2015 | An email to Davis, utilizing a server located outside of New Jersey, attached to which was a fake inflated quote purportedly from Vendor 1, indicating that Vendor 1 would replace the Library's Chiller for $65,000, an amount higher than that quoted by VH. |
| 6 | March 5, 2015 | An email to Davis, utilizing a server located outside of New Jersey, attached to which was a fake inflated quote purportedly from Vendor 2, indicating that Vendor 2 would replace the Library's Chiller for $58,000, an amount higher than that quoted by VH. |
| 7 | March 26, 2015 | An email to Davis, utilizing a server outside of New Jersey, attached to which was a Chiller vendor's "Equipment Quotation" of approximately $33,875, which included the price for a Chiller, to give the false impression that defendant ADAMS was taking steps to order a Chiller to replace the one at the Library. |
| 8 | May 29, 2015 | An email to Davis, utilizing a server located outside of New Jersey, attached to which was a VH invoice, dated May 15, 2015, stating that VH "received $25,000.00 towards the purchase of the . . . Chilling Unit," to give the false impression that defendant ADAMS had ordered a Chiller for the Chiller Replacement Project. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## FORFEITURE ALLEGATION AS TO COUNTS 1 AND 2 AND 5 TO 8

1.      As a result of committing the offenses charged in Counts 1 and 2 and 5 to 8 of this Indictment, defendant,

SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, constituting or derived from proceeds traceable to the commission of the offenses charged in Counts 1 and 2 and 5 to 8 of this Indictment, and all property traceable thereto.

## FORFEITURE ALLEGATION AS TO COUNTS 3 AND 4

2.      As a result of committing the offenses charged in Counts 3 and 4 of this Indictment, the defendant,

SHENANDOAH ADAMS SR., a/k/a "SHANE ADAMS SR.,"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), all property, real and personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of the offenses charged in Counts 3 and 4 of this Indictment.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

3.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

16

e.   has been commingled with other property which cannot be divided without

difficulty;

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p) (as incorporated by 28 U.S.C.

§ 2461(c) and 18 U.S.C. § 982(b)), to forfeiture of any other property of defendant ADAMS up

to the value of the above-described forfeitable property.

A TRUE BILL

_Craig Carpenito_
CRAIG CARPENITO
UNITED STATES ATTORNEY

17

CASE NUMBER: 20-CR-194_____

## ~~United States District Court District~~ of New Jersey

~~UNITED STATES OF AMERICA~~

v.

**SHENANDOAH ADAMS SR.,**
**a/k/a/ "SHANE ADAMS SR."**

## ~~INDICTMENT FOR~~

18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A),
1014, 1343, and § 2;
28 U.S.C. § 2461



A True Bill

Foreperson

**CRAIG CARPENITO**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

J FORTIER IMBERT
CARI FAIS
*ASSISTANT U.S. ATTORNEYS*

*973-645-2890*
*973-353-6076*